STATE of Minnesota, Respondent,

v.

Timothy B. ROTHERING, Appellant.

No. C7–86–588.

Court of Appeals of Minnesota.

Dec. 2, 1986.

Review Denied Jan. 16, 1987.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Julius E. Gernes, Winona Co. Atty., Winona, for respondent.

C. Paul Jones, Minnesota Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and LANSING and LESLIE, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Appellant challenges the sufficiency of evidence for kidnapping and criminal sexual assault convictions. He also contends the trial court made several errors in admitting and excluding evidence and in refusing an instruction permitting conviction for fornication, a misdemeanor. We find no merit in the appeal.

## FACTS

In the middle of the night on August 5, 1985, A.P. was asleep in her farm home near Fremont, Minnesota. She lived with her fiance, but he was out of town at the time.

A.P. testified at trial that she was awakened by the sound of a car pulling into her driveway. She put on her robe and went to investigate. She learned that two acquaintances, appellant and David Schell, were in the yard, and she thought both men had been drinking. A.P. mentioned that her fiance was gone and the men left.

A few minutes later the two men pulled up to the place again, apparently because of car trouble. After a short visit with A.P., who let them use a flashlight and gave them permission to look in the garage for some tools, the men left again.

A few minutes later the car returned. Rothering asked for some black tape to use on a radiator hose. A.P. was about to close the door behind Rothering when he suddenly turned around and grabbed her, saying "Come on, let's go."

A.P. testified that she struggled but Rothering grabbed her by the neck and dragged her to the car. Rothering told Schell to find some rope and shoved A.P. into the passenger seat. Schell got in the driver's seat and they tied A.P.'s wrists with the rope. A.P.'s attempt at grabbing a knife from the dashboard was quickly thwarted. Schell then drove away.

Rothering reclined the passenger seat and Schell placed his hand between A.P.'s legs while Rothering tried to kiss her. Rothering unzipped her robe and attempted sexual penetration; he used some ice retrieved from a cooler to force open her legs and engaged in sexual intercourse with A.P. A.P. eventually escaped when the car stopped. She ran to a nearby farmhouse and asked Bruce Barkheim to call the police. A.P. was very upset and told Barkheim two men had taken her from her house.

A.P. told a police officer what happened. She was taken to a hospital for an examination. A.P. was found to have tenderness in her left jaw joint, a bruise on her shoulder, and a narrow band of bruises, swelling, and abrasions that could be produced by a rope. A.P. also had a bruise discovered during the vaginal examination, consistent with an act of non-consensual sexual intercourse. Semen found during the examination was later analyzed and appellant could have been the source of the semen.

The State also introduced *Spreigl* evidence that in January 1985 appellant Rothering and his girlfriend visited with Leanne Ladewig and her finance at Ladewig's home. Ladewig had gone to bed, but about three hours later she woke up and saw Rothering standing in her door. Rothering got in bed with her and began to fondle her breasts. Rothering told her to go along since nobody would find out. He left as Ladewig's mother drove up. Rothering threatened he would get Ladewig if she told anyone. Ladewig believed that Rothering appeared drunk. She did not report the incident to police but told her mother as well as her boyfriend's mother, Carol Morey. Morey corroborated Ladewig's testimony at trial.

Rothering claimed consent as a defense. He claimed he had only had about three beers to drink on the evening of August 5, 1985. He testified that when he and Schell first arrived at A.P.'s house, A.P.'s robe was undone and portions of her breasts were exposed. According to Rothering, on their third visit A.P. pinched him on the

buttocks and said, "Does Gary [her finance] know anything about us?" Rothering claimed A.P. willingly went for a ride and willingly had sex with him in the car while Schell was driving.

The defense also presented character evidence that Rothering was nonviolent, shy, and gentlemanly towards women. The State presented a rebuttal witness, without objection, who testified that after Rothering and Robin Sloan broke up, Rothering appeared at a neighbor's house, forced himself in and began screaming at Robin, calling her a bitch and a whore and threatening to get her.

The jury returned a verdict convicting appellant on three counts of criminal sexual conduct and one count of kidnapping. The trial court adjudicated Rothering guilty of first degree criminal sexual conduct, Minn.Stat. § 609.342, subd. 1(e)(i) (Supp.1985) (causing personal injury and using force or coercion to accomplish penetration), and kidnapping, *id.* § 609.25, subd. 1(2) and subd. 2(1) (1984). He was sentenced to concurrent prison terms of 21 and 43 months.

### ISSUES

1. Did the trial court abuse its discretion in (1) allowing the rebuttal witness to testify about specific instances of misconduct or in denying a motion for a new trial based on newly discovered evidence concerning the misconduct, (2) denying appellant's mid-trial motion to introduce evidence of A.P.'s alleged prior sexual conduct with appellant, (3) admitting *Spreigl* evidence?

2. Was the evidence sufficient?

3. Did the trial court err in refusing to submit the crime of fornication as a lesser-included offense?

4. Did appellant receive effective assistance of counsel?

### ANALYSIS

#### 1.

a. Other misconduct.

In rebuttal the State introduced the testimony of Helen Sloan, who described appellant's conduct toward her daughter Robin a few days after Robin and appellant had broken up. Appellant's claim that this evidence was improper rebuttal testimony cannot be reviewed on appeal because no objection was made at trial. *See State v. Folkert,* 354 N.W.2d 583, 585 (Minn.Ct. App.1984).

■ Introduction of the testimony is not plain error affecting substantial and fundamental rights. *See* Minn.R.Crim.P. 31.02; *State v. Gruber,* 264 N.W.2d 812, 817 (Minn.1978). It was brief testimony bearing on essentially a collateral matter and involving no constitutional dimensions.

Appellant also claims the trial court abused its discretion in denying his motion for a new trial based on newly discovered evidence consisting of an affidavit from Robin Sloan. In her affidavit, Robin states:

4. I have been informed that my mother, Helen Sloan, testified that Timothy Rothering forced me to leave the Redmen's Club on a particular night. This is not true. On that night, any actions on my part towards Timothy Rothering were entirely voluntary and without any duress or coercion on Timothy Rothering's part.

■ However, Helen Sloan never testified that appellant forced Robin to leave this club. Further, a new trial may be granted only if appellant shows that the newly discovered evidence could not have been discovered before trial by due diligence, that the evidence was not within his or counsel's knowledge, that the evidence is not impeaching, cumulative, or doubtful, and that it would probably produce a different result. *Berry v. State,* 364 N.W.2d 795, 796 (Minn.1985) (citing *State v. Caldwell,* 322 N.W.2d 574, 588 (Minn.1982)). Appellant has failed to meet the criteria with respect to this evidence.

b. Other victim conduct.

During the direct examination of A.P., appellant's attorney moved, in chambers, to

inquire into "at least one past sexual contact between the victim and the defendant * * *." Defense counsel was unaware that a motion before trial was required for this type of evidence. *See* Minn.Stat. § 609.347, subd. 4 (1984). As an offer of proof, however, counsel stated that in July 1985 appellant and A.P. left a bar in Stockton, went to the Mississippi Queen in Winona, and engaged in sexual intercourse. The prosecutor objected and argued the motion was untimely and that A.P. was prepared to testify that she had never had any prior sexual contact with appellant. The trial court denied permission for the inquiry.

In appellant's motion for a new trial, appellant's new counsel submitted an affidavit stating appellant would testify that A.P. had consensual sexual intercourse with him on at least three occasions between the fall of 1984 and July 1985, each time in his car. The trial court denied the new trial motion.

In *State v. Larson*, 389 N.W.2d 872 (Minn.1986), the supreme court stated:

> Evidence of the past sexual conduct of a criminal sexual conduct complainant with a defendant may be introduced when the evidence is shown to be material and where its inflammatory or prejudicial nature does not outweigh its probative value. Minn.Stat. § 609.347, subd. 3(c) (1984). The defendant must make a motion and an offer of proof of the relevancy of the proposed evidence. Minn.Stat. § 609.347, subd. 4 (1984). Larson did not move the trial court for admission of such evidence, as required by the statute, * * *. We hold the trial court did not err in prohibiting cross-examination about the complainant's past sexual conduct with the defendant, * * *.

*Id.* at 875–76.

■■■ By failing to move before trial or to show good cause, as in *Larson*, appellant forfeited the opportunity to offer evidence about the alleged prior conduct. Moreover, the trial court did not abuse its discretion in rejecting the evidence based on Minn.R.Evid. 401 and 403, as the poten-

tial for harm outweighed any probative value the evidence might have had. *State v. Mar*, 291 N.W.2d 223, 225 (Minn.1980). In addition, appellant was not deprived of his sixth amendment right of confrontation by the court's refusal to permit him to cross-examine A.P. about the alleged prior sexual encounter. As this court stated in *State v. Jones*, 381 N.W.2d 44 (Minn.Ct.App. 1986):

> The confrontation clause of the United States Constitution envisions a cross-examination of the witness in which the accused has the opportunity to test the recollection, the conscience, and the credibility of the witness. *See Ohio v. Roberts*, 448 U.S. 56, 63–64, 100 S.Ct. 2531, 2537–38, 65 L.Ed.2d 597 (1980). Beyond that, the extent to which extraneous matters are permitted into a criminal case for the purpose of showing the probability or improbability of the existence of some fact in dispute, or to affect the credibility of the testimony of a witness as to such fact, rests largely in the discretion of the trial court. *State v. Brown*, 185 Minn. 446, 448, 241 N.W. 591, 592 (1932). The scope of cross-examination is also largely left to the discretion of the trial judge. *State v. Dille*, 258 N.W.2d 565, 569 (Minn.1977).

*Id.* at 47. *See State v. Dornack*, 329 N.W.2d 839, 840 (Minn.1983); *Powe v. State*, 389 N.W.2d 215, 219–20 (Minn.Ct. App.1986), *pet. for rev. denied,* (Minn. July 31, 1986). *See also Delaware v. Van Arsdall*, —— U.S. ——, ——, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (trial judges retain wide latitude insofar as the confrontation clause is concerned to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of issues, witness' safety or repetitive or marginally relevant interrogation).

### c. *Spreigl.*

■■■ Appellant contends the trial court abused its discretion in admitting *Spreigl* evidence concerning the Ludewig incident. In *State v. Doughman*, 384 N.W.2d 450 (Minn.1986), the supreme court summarized

the *Spreigl* standards and appellate review of those determinations:

> We will not reverse a trial court's admission of evidence of other crimes or bad acts unless an abuse of discretion is clearly shown. *State v. Ture,* 353 N.W.2d 502, 515 (Minn.1984); *State v. Johnson,* 256 N.W.2d 280, 286 (Minn. 1977). However, we have noted that in order for such evidence to be admissible the trial court must determine that there is "clear and convincing" evidence that the defendant participated in the crimes or bad acts sought to be admitted. *State v. Billstrom,* 276 Minn. 174, 179, 149 N.W.2d 281, 285 (1967). The court must also determine that the evidence of prior crimes or bad acts is "relevant and material to the state's case." *State v. Morrison,* 310 N.W.2d 135, 137 (Minn.1981). In addition, it must rule that the probative value of the evidence outweighs any potential for "unfair prejudice." *State v. Bolts,* 288 N.W.2d 718, 719 (Minn.1980).

*Id.* at 454. Here the evidence was admitted to show a common scheme or modus operandi. Minn.R.Evid. 404(b). The evidence was relevant and probative. The *Spreigl* incident and the instant offense had several similarities—similar geographical area, only months apart, and similar circumstances. *See Aligah v. State,* 394 N.W.2d 201, 204–05 (Minn.Ct.App.1986). We find no authority supporting the conclusion that the trial court abused its discretion in admitting evidence of this relevant event in spite of its prejudicial effect.

### 2.

■ We have reviewed the record and conclude the evidence was sufficient to sustain appellant's convictions. A.P.'s testimony was detailed, consistent, and amply corroborated by her injuries, her prompt complaint, her emotional state, the physical evidence, and the *Spreigl* evidence. We note that corroboration of A.P.'s testimony is not necessary. Minn.Stat. § 609.347, subd. 1 (1984).

### 3.

Appellant claims the trial court abused its discretion in refusing to submit the crime of fornication as a lesser-included offense of first and third degree criminal sexual conduct.

■ A lesser-included offense is necessarily included if it is impossible to commit the latter without also committing the former. *State v. Roden,* 384 N.W.2d 456, 457 (Minn.1986). In determining whether an offense is a lesser-included offense, the court looks at the elements of the offense, not the particular case. *Id.* *See Bellcourt v. State,* 390 N.W.2d 269, 273 (Minn.1986).

■ "When any man and single woman have sexual intercourse with each other, each is guilty of fornication, which is a misdemeanor." Minn.Stat. § 609.34 (1984). First and third degree criminal sexual conduct statutes prohibit sexual penetration with another person. *Id.* §§ 609.342, subd. 1, 609.344, subd. 1 (Supp.1985). In three respects, gender, marital status, and the nature of the act, a person can commit criminal sexual conduct in the first and third degrees without committing fornication. Thus, fornication is not a lesser-included offense of criminal sexual conduct in the first and third degree.

We note that although appellant argues that his theory of the case was not given to the jury, his theory of the case was consent. The jury was properly instructed that lack of consent was an essential element of the charges.

### 4.

■ Appellant claims he was denied effective assistance of counsel because counsel failed to file the required notice concerning the allegation of prior sexual conduct. Under the principles of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we reject appellant's contention. Even if counsel had moved timely, it is doubtful the evidence would have been admitted. The trial court properly denied appellant's post-trial motions, stating:

[G]iven the offer of proof the [motion] would have been denied * * *. Even assuming the fact to be true, that one has once willingly engaged in sexual intercourse in private without more does not tend to make it more probable that she would willingly leave the seclusion of her home to have sexual intercourse even with the same person in the front passenger seat of a car in the presence of another man driving around the countryside. Again, because of the disparity of circumstances the proffered evidence simply does not give rise to an inference that the victim was presently acting in conformity with past conduct attributed to her.

These observations show that the failure to seek the requisite pre-trial order was inconsequential, such that the trial court properly rejected appellant's ineffective counsel claim.

### DECISION

The trial court did not err in its evidentiary rulings or its instructions. The evidence is sufficient to support appellant's convictions. Appellant was not denied effective assistance of counsel.

Affirmed.